IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHANIE SCHREINER, M.D., on her own behalf and on behalf of her beneficiary son, A.K.C., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY and UNITED BEHAVIORAL HEALTH, INC., <br><br> Defendants. | Case No. 3:19-cv-00094 <br> Judge Crenshaw/Frensley |

## REPORT AND RECOMMENDATION

Plaintiff Stephanie Schreiner filed this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Docket No. 36. Dr. Schreiner alleges that the Defendants, United Healthcare Insurance Company and United Behavioral Health (collectively, "United") unlawfully denied her claim for residential treatment for her beneficiary son despite evidence that he qualified for the benefits. *Id.* at 1. This matter is now before the Court upon United's "Rule 12(B)(6) Motion to Dismiss and Motion for Attorney's Fees Under 29 U.S.C. § 1132(g)." Docket No. 38. United has also filed a Supporting Memorandum. Docket No. 39. Dr. Schreiner has filed a Response in Opposition. Docket No. 44. United has filed a Reply. Docket No. 46. For the reasons set forth below, the undersigned recommends that United's Motion be GRANTED IN PART and DENIED IN PART.

# I. BACKGROUND[1]

Dr. Schreiner is a single mother of five children. Docket No. 36, p. 4. Four of the children, including her oldest child A.C.K., were adopted. *Id.* A.C.K. was 12 in August 2017 when he began exhibiting disturbing behaviors, including urinating on his brother's clothes and poisoning the family's goldfish. *Id.* at 4-5. A.C.K. was admitted to the Child and Adolescent Psychiatry ward at Vanderbilt Children's Hospital, where staff observed that A.C.K. may have Reactive Attachment Disorder, a rare but serious mental illness.

Over the next year, A.C.K. was treated for his mental health challenges in various settings, including Elk River Treatment Program in Alabama and an additional stay of nearly a month at Vanderbilt Children's Hospital. *Id.* at 5-8. In October 2018, Dr. Schreiner had A.C.K. admitted to Mille Lacs Academy in Minnesota ("Mille Lacs"). *Id.* at 8. Mille Lacs in a residential care facility that specializes in treating boys between the ages of 10-18 who have significant mental health issues and unhealthy sexual behaviors. *Id.* The Mille Lacs psychologist who assessed A.C.K. found that he "does not have clear goals, strategies, or the personal resources necessary for a healthy sexual future that is free from sexual offending" and that he needs to continue to "participate in sex-specific residential treatment to meet the level of acuity he requires." *Id.* at 9. He also told his Mille Lacs therapist that he wanted to kill his mother and harm or kill his family's pets in order to traumatize his younger siblings. *Id.* at 8. A.C.K. made slow but steady progress at Mille Lacs. *Id.* at 10.

Dr. Schreiner is a participant in an ERISA Employee Welfare Benefit Plan (the "Plan") offered through her employer. *Id.* at 2. The Plan is administered by United. *Id.* On November

---

[1] Except where noted, all facts are taken from the Amended Complaint (Docket No. 36) and are accepted as true for the purpose of ruling on this Motion.

21, 2018, United terminated benefit coverage for A.C.K.'s residential treatment at Mille Lacs, explaining that residential treatment was not "medically necessary" for him. *Id.* at 10. As A.C.K.'s provider, Mille Lacs filed an urgent appeal of the termination of benefits. *Id.* at 11. On November 28, 2018, United denied the urgent appeal. *Id.* The Department of Children's Services of Williamson County ("DCS") then petitioned for custody of A.C.K. in order to remove him from the family home out of concern for the safety of his younger siblings. *Id.* at 12-13. DCS placed A.C.K. at Hermitage Hall, a mental health facility. *Id.* at 16-17. On December 31, 2018, Dr. Schreiner submitted a second-level appeal of the denial of benefits. *Id.* at 13. On January 3, 2019, United denied Dr. Schreiner's second-level appeal. *Id.* at 14. On January 8, 2019, Dr. Schreiner submitted an external review to an independent review organization ("IRO"). *Id.* at 15. On January 18, 2019, Dr. Schreiner filed the original Complaint in this lawsuit. Docket No. 1. On February 4, 2019, the IRO completed its review and determined that the denial of residential treatment was not supported by medical evidence and was a covered benefit under the terms of the plan, reversing the benefit denial. Docket No. 36, p. 16. On May 14, 2019, Dr. Schreiner filed a Motion for Leave to Amend Complaint, which was granted. Docket Nos. 32, 35.

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. But, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). Mere recitation of the elements of a cause of action or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Iqbal*, 556 U.S. at 678; *citing Twombly*, 550 U.S. at 555. The court must "accept as true all non-conclusory allegations in the complaint . . . ." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). But the Court does not have to accept unsupported legal conclusions. *Iqbal*, 556 U.S. at 678.

"In ERISA actions, when a defendant moves to dismiss a complaint for failure to exhaust administrative remedies, courts typically resolve the issue based on the face of the pleadings and not the administrative record." *Jordan v. Reliance Std. Life Ins. Co.*, No. 1:16-CV-23, 2018 WL 543041, 2018 U.S. Dist. LEXIS 11435, at *8-9 (E.D. Tenn. Jan. 24, 2018), *citing Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 721 (6th Cir. 2005). Further, a document referred

4

to or attached to the pleadings, and integral to plaintiff's claims, may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

## B. ERISA's Claims Procedure

ERISA has six remedial provisions. The remedial provisions relevant to this action are ERISA § 502(a)(1)(B) and § 502(a)(3), which state:

> **(a) Persons empowered to bring a civil action.** A civil action may be brought –
>
> **(1)** by a participant or beneficiary –
>
> . . .
>
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan;
>
> . . .
>
> **(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . .

29 U.S.C. § 1132(a).[2]

ERISA permits a participant of certain employee benefit plans to file a civil action in federal court for the recovery of benefits under those plans. 29 U.S. C. § 1132(a)(1)(B), (e)(1).

---

[2] The usual citation convention for citing to ERISA among practitioners and the Department of Labor is to cite to the Act itself (e.g., ERISA § 502). Courts generally cite to the corresponding section of the United States Code. (e.g., 29 U.S.C. § 1132). Regrettably, the section numbers of ERISA and 29 U.S.C. do not correspond. For example, ERISA § 510 and 29 U.S.C. 1140 are the same provision. Throughout their briefs, the Parties have used both citation formats interchangeably. *See* Docket Nos. 38, 39, 44, 46. In this Report and Recommendation, the Court has provided parallel citations wherever practicable.

5

Case 3:19-cv-00094   Document 59   Filed 02/26/20   Page 5 of 16 PageID #: 721

But, a participant must "exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). While ERISA itself does not expressly require exhaustion, the Court of Appeals for the Sixth Circuit has established a judicially created doctrine of exhaustion based on "[t]he administrative scheme of ERISA." *Constantino v. TRW, Inc.*, 13 F.3d. 969, 974 (6th Cir. 1994), *quoting Miller*, 925 F.2d at 986 (internal quotation marks omitted). Therefore, a participant can only file suit to recover benefits under ERISA after receiving a plan administrator's final decision as to benefits entitlement. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013) ("A participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial").

## C. Dr. Schreiner's ERISA Claims

### 1. Claim for Benefits Under ERISA § 502(a)(1)(B) – 29 U.S.C. § 1132(a)(1)(B)

Dr. Schreiner claims that United's "denial of Plaintiff's claim for coverage for residential treatment for her son A.C.K. is incorrect, arbitrary and capricious and, as a result, Defendants deprived Plaintiff of the benefits she is due under the terms of the Plan and Policy." Docket No. 36, p. 21. United contends (1) that Dr. Schreiner failed to exhaust her administrative remedies before bringing her claim for benefits; and (2) Dr. Schreiner's claim for benefits was mooted by the IRO decision reversing the denial of benefits. Docket No. 39, p. 4, 7-10.

**(a) Exhaustion of Administrative Remedies**

The Amended Complaint describes the sequence of events that took place as Dr. Schreiner sought an administrative remedy:

> On November 21, 2018, just over one month after A.C.K. was admitted to Mille Lacs Academy, Defendants terminated benefit coverage for A.C.K.'s residential treatment at Mille Lacs.

6

> . . .
>
> As provided for under the Policy, Mille Lacs, as Plaintiff's provider, filed an urgent appeal ("Urgent Appeal") of Defendants' decision to deny benefit coverage for residential treatment.
>
> On November 28, 2018, United Behavioral informed Plaintiff in a letter that it was denying the Urgent Appeal ("Appeal Denial Letter").
>
> . . .
>
> On December 31, 2018, Plaintiff, through counsel, submitted to Defendants a second-level appeal ("Second Level Appeal") as set out in the Appeal Denial Letter that she received from United Behavioral.
>
> . . .
>
> On January 3, 2019, United Behavioral denied Plaintiff's Second-Level Appeal and upheld its decision to deny residential treatment to A.C.K.
>
> . . .
>
> On January 8, 2019, Plaintiff, through counsel, submitted an external review to an independent review organization ("External Appeal"), as set out in the Second-Level Denial Letter.
>
> . . .
>
> On February 4, 2019, Plaintiff's External Appeal was approved by an independent review organization. The independent review organization determined that Defendants' denial was not supported by medical evidence and was inappropriate given Plaintiff's documented mental health challenges.

Docket No. 36 (Amended Complaint), p. 10-16 (paragraph numbering and citations omitted).

United argues that Dr. Schreiner did not exhaust her administrative remedies because her IRO review request was still pending when she filed her original Complaint on January 18, 2019. Docket No. 39, p. 8. Dr. Schreiner maintains that she was "permitted to bring her action after United denied her Second-Level Appeal." Docket No. 44, p. 10, *citing* 29 C.F.R. § 2560.503-1(c).

29 C.F.R. § 2560.503-1 ("Administration and Enforcement Under the Employee Retirement Income Security of 1974, Claims Procedure") discusses situations in which a participant need not exhaust her administrative remedies because her claims will be deemed exhausted. These are cases where the plan has failed to establish and follow "reasonable claims procedures." 29 C.F.R. 2560.503-1(l) ("[I]n the case of the failure of the plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act . . . ."). One way a plan can fail to establish or follow reasonable claims procedures is when it requires a claimant to file more than two appeals before filing suit.

> The claims procedures of a group health plan will be deemed to be reasonable only if, in addition to complying with the requirements of paragraph (b) of this section –
>
> . . .
>
> **(2)** The claims procedures do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act . . . .

29 C.F.R. 2560.503-1(c)(2).

On its face, United's plan does not require a claimant to file more than two appeals of an adverse benefit determination. *See* Docket No. 21-1. The Section titled "Procedures for Appealing an Adverse Determination" describes how to appeal, including the option of pursuing an "urgent appeal." *Id.* at 11-16. The plan then states that "[i]f the appeal of an Adverse Determination is denied by us or our utilization review agent, you, your designated representative or your provider of record have the right to request a review of that decision by an Independent Review Organization (IRO)." *Id.* at 14. Thus, two appeals are required by the plan, which nowhere

8

discusses or describes the "Second-Level Appeal" referred to by Dr. Schreiner. Docket No. 36, p. 13-14.

But there is a place where a "second-level appeal" is discussed: the November 28, 2018 letter that United sent Dr. Schreiner denying her first-level appeal. *See* Docket No. 32-13. Following information about the denial of benefits, that letter includes a document titled "Important Information About Your Right to Request a Second-Level Internal Review of a Non-Coverage Determination." *Id.* at 4-5. It contains instructions on what do after a denial:

> **What if I don't agree with this decision?**
>
> You have a right to request a Second-Level internal appeal review of any decision not to provide you a benefit or pay for an item or service (in whole or in part).

Docket No. 32-13, p. 4. After outlining the process and procedures for receiving a Second-Level internal appeal review, on the next page the document goes on to discuss:

> **Additional information about your appeal rights:** If we continue to deny the payment, coverage, or service requested or you do not receive a timely decision, you *may* be able to request an external review of your claim by an independent third party, who will review the non-coverage determination and issue a final decision.

*Id.* at 5 (emphasis added). Thus, the external review by an independent third party (IRO) was presented to Dr. Schreiner, not as the necessary second appeal required by the plan, but rather as an optional third step, clearly meant to be taken only after the Second-Level internal appeal review – and not even an option to which she was necessarily entitled. *Id.*

The Court therefore finds that, at least as pertains to Dr. Schreiner, the plan was administered in a way that required her to file more than two appeals of an adverse benefit determination prior to bringing a civil action, in contravention of 29 C.F.R. 2560.503-1(c)(2). For

9

that reason, the Court should determine that Dr. Schreiner's administrative remedies are deemed exhausted pursuant to 29 C.F.R. 2560.503-l(1).

**(b) Mootness**

It is undisputed that that IRO granted Dr. Schreiner's appeal of the adverse benefits determination. *See* Docket No. 44, p. 8; Docket No. 39, p. 4. United asserts that "[a]t this time, all of the claims at issue in this lawsuit have been processed and paid." Docket No. 39, p. 4 (emphasis in original). In contrast, Dr. Schreiner contends that she "still needs relief under § 1132(a) as the benefits at issue have not been paid in full." Docket No. 44, p. 9, *citing* Docket No. 36, p. 20 ¶ 125. The cited paragraph of the Amended Complaint states:

> On or around May 10, 2019, Plaintiff learned that Defendants informed Mille Lacs that it had overpaid the costs of Plaintiff's original claim for residential treatment, even though Defendants were billed under the terms of their contract with Mille Lacs. Mille Lacs has since billed Plaintiff for the amount Defendants claimed was overpaid and has informed her that it cannot readmit A.C.K. until her bill is paid in full.

Docket No. 36, p. 20.

In response, United argues that "a challenge to the amount of benefits that were paid under the terms of the ERISA Plan for the claims once they were determined to be a covered expense under the terms of the ERISA plan" is a "completely new benefit determination" for which Dr. Schreiner must also first exhaust her administrative remedies before she can bring a claim in federal court. Docket No. 39, p. 9. United contends that Dr. Schreiner "has not even initiated the administrative appeal process relating to her challenge to the amount of benefits available under the ERISA plan for the claims." *Id.* at 10.

Dr. Schreiner concedes that the IRO granted her appeal and reversed the decision to deny residential treatment benefits to A.C.K. Docket No. 44, p. 8. She also concedes that some portion

of the residential treatment has been paid for, although apparently there is a dispute between United and Mille Lacs as to the amount to be paid. Docket No. 36, p. 20. The Court therefore finds that Dr. Schreiner's claim of deprivation of benefits under ERISA § 502(a)(1)(B) (29 U.S.C. §1132 (a)(1)(B)) has been mooted by the decision of the IRO.

### 2. Claim for Equitable Relief Under ERISA § 502(a)(3) – 29 U.S.C. § 1132(a)(3)

Dr. Schreiner has brought a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). Docket No. 36, p. 21. She argues that her "502(a)(3) claim arises from an entirely different set of facts as her 502(a)(1)(B) claim." Docket No. 44, p. 14. Specifically, she claims to have "sustained damages related to the following:"

- A.C.K. became a ward of the state after the Tennessee Department of Children Services took legal custody of him because DCS feared for the safety of A.C.K.'s family. (Docket No. 36 at 12 ¶¶ 73-74.)

- Plaintiff had to retain a family law attorney to represent her interests in juvenile court proceedings and in communications with the state of Tennessee. (*Id.* at 22 ¶ 137).

- DCS admitted A.C.K. at Hermitage Hall, a mental health facility that placed his safety and well-being at risk, treated him with unqualified therapists, and altered his diagnoses to keep him at the facility. (*Id.* at 19-20 ¶¶ 120-124.) As a result, A.C.K.'s guardian ad litem filed a motion with the Williamson County Juvenile Court asking the court to review his placement at the facility. (*Id.* at 19 ¶ 122.)

- Because Defendants disrupted A.C.K.'s care by failing to carefully evaluate his medical condition, A.C.K.'s mental condition has regressed. (*Id.* at 18 ¶ 114).

*Id.* at 14 (footnote omitted).

"A claimant can pursue a breach-of-fiduciary duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where

the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (emphasis in original), *citing Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840-42 (6th Cir. 2007). Here, all of the injuries that Dr. Schreiner claims to have suffered (and which the Court accepts as true for the purposes of this Motion) are related to and stem from the denial of benefits. They were caused by United's withholding of the benefit to which (all now agree) A.C.K. was entitled. But the Sixth Circuit has held that "[t]he denial is the injury and the withholding is simply ancillary thereto, the continuing effect of the same denial. Together they comprise a single injury." *Rochow*, 780 F.3d at 374.

Although the undersigned does not recommend that Dr. Schreiner recover damages under § 502(a)(1)(B), the standard is not whether she *will* recover such damages but whether she *may* recover under that provision. *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 589 (6th Cir. 2012); *see Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005) (clarifying that under some circumstances, an ERISA plaintiff may simultaneously bring claims under both § 502(a)(1)(B) and § 502(a)(3)). If Dr. Schreiner's claim had not been mooted by the IRO's decision to grant A.C.K.'s residential treatment benefits, § 502(a)(1)(B) would have provided an adequate remedy. Therefore, Dr. Schreiner is not entitled to bring a claim for the same injury under § 502(a)(3), which is intended to serve "as a safety net by providing equitable relief for violations that the statute does not elsewhere adequately remedy." *Donati v. Ford Motor Co.*, 821 F.3d 667, 673 (6th Cir. 2016), *quoting Varity Corp. v. Howe*, 516 U.S. 489. 512 (1996) (internal quotation marks omitted).

### 3. Request for Order Providing Future Benefits

The Amended Complaint also requests "injunctive relief ordering Defendants to pre-authorize residential treatment for A.C.K. for a period of up to 12 months." Docket No. 36, p. 23. Dr. Schreiner cites no authority (and the Court has located none) supporting the proposition that the Court can provide this relief. It is not clear that such an order would be appropriate. *See Osborn v. Principal Life Ins. Co.*, No. 2:17-cv-329, 2017 WL 4517621, 2017 U.S. Dist. LEXIS 166877, at *10 (S.D. Ohio Oct. 10 2017). As the *Osborn* Court explained in the context of a decision about the denial of disability benefits:

> This court does not have the authority to assume the administrator's role of determining whether plaintiff continues to satisfy the requirements for long-term disability benefits under the terms of the Plan, nor does this court have that kind of expertise. As the court in Wade noted, "no ERISA provision permits the Court to predict the future in order to fashion appropriate relief under the statute."

*Id.*, *quoting Wade v. Life Ins. Co. of N. Am.*, 245 F. Supp. 2d 182, 188 (D. Me. 2003). In the absence of clear authority to grant such prospective relief, the undersigned cannot recommend doing so.

### 4. Dr. Schreiner's Claim for Attorneys' Fees

ERISA § 502 provides: "[i]n any section under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has clarified that a fee claimant need not be a "prevailing party" to be eligible for attorney's fees under ERISA's fee-shifting statute. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010). Rather, eligibility for attorney's fees merely requires that the claimant achieve "some degree of success on the merits." *Id.* Here, the Court is unable to award attorneys' fees to Dr. Schreiner because she has not achieved some degree of success on the merits.

### D. United's Claim for Attorneys' Fees

United has also made a claim for its attorneys' fees. Docket No. 39, p. 14. "Under § 502(g)(2) of ERISA (29 U.S.C. § 1132(g)(2)), the award of attorney fees is mandatory where a fiduciary has sued successfully to enforce an employer's obligation to make contributions to a multiemployer plan. In any other action under ERISA, however, the statute provides that 'the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party.'" *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996), *quoting* ERISA § 502(g)(1) (29 U.S.C. § 1132(g)(1)). There is "no presumption as to whether attorney fees will be awarded." *Id.*, *citing Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301-02 (6th Cir. 1991).

Five factors are generally considered when determining whether to award fees. *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). "[W]hile the five-factor *King* test is not required, it still has vitality in helping courts determine whether or not to award fees to a party that achieves some degree of success on the merits." *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 437 (6th Cir. 2013). "The *King* factors are not statutory, and so should be looked at holistically with no one factor 'necessarily dispositive.'" *Warner v. DSM Pharma Chems. N. Am., Inc.*, 452 F. App'x 677, 681 (6th Cir. 2011), *quoting Foltice*, 98 F.3d at 937. The five factors are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*King*, 775 F.2d at 669.

The fee-shifting statute expressly grants courts discretion to award attorneys' fees "to either party."  29 U.S.C. § 1132(g)(1).  Yet, "in most ERISA cases, the nature of the *King* factors makes it less likely that the factors will favor an award to defendants." *Huizinga v. Genzink Steel Supply & Welding Co.*, 984 F. Supp. 2d 741, 745 (W.D. Mich. 2013).  *See* 82 ERISA Practice & Litigation § 11:79 (West 2013), n.37 ("a successful defendant will normally not receive an attorney's fee award unless the plaintiff's suit was either frivolous or in bad faith").

Here, the five factors weigh against awarding attorneys' fees to United.  (1) The Court does not find that Dr. Schreiner acted in bad faith.  As discussed above, Dr. Schreiner was reasonable in believing that she had exhausted her administrative appeal process.  While she later failed to dismiss her suit after the IRO decision mooted her claim for benefits, she continued to have other claims, including for attorneys' fees, that she could have reasonably believed had merit.  Indeed, she maintains that she is entitled to separate relief, unconnected to the denial of benefits, under § 502(a)(3).  While the Court does not find in her favor in regard to that recovery, neither does it find that she acted in bad faith.  (2) Although she is a professional, Dr. Schreiner is also a single mother of five children, one of whom is facing ongoing health challenges.  She is unlikely to be able to pay United's legal bills.  (3) The Court cannot see how ordering Dr. Schreiner to pay United's attorneys' fees would have any beneficial deterrent effect on other persons under similar circumstances.  (4) The fourth factor does not apply, as this is not a case about conferring a common benefit on all participants or resolving significant legal questions regarding ERISA. (5) Dr. Schreiner's claims have ultimately been found to be without merit; however, her original position when bringing suit – that her son was entitled to residential treatment benefits – was determined to be correct by the IRO.  After holistically evaluating the five factors in the context

15

of the facts of this case, the Court recommends finding that United is not entitled to an award of its attorneys' fees.

### III. CONCLUSION

For the reasons set forth above, the undersigned recommends that United's Rule 12(B)(6) Motion to Dismiss and Motion for Attorney's Fees Under 29 U.S.C. § 1132(g) should be GRANTED IN PART and DENIED IN PART. Because her claim for benefits was mooted by the reversal decision of the IRO and she cannot show an injury that is separate and distinct from the denial of benefits, Dr. Schreiner's claims under ERISA § 502(a)(1)(B) (29 U.S.C. §1132(a)(1)(B) and ERISA § 502(a)(3) (29 U.S.C. §1132(a)(3) should be dismissed. Because the relevant five factors weigh against it, United's claim for attorneys' fees should be denied.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge